FILED
OCT 0 5 2011
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                ] Case No. 08-53283-ASW
                                     ]
BYRON JHA,                           ] Chapter 13
                                     ]
            Debtor.                  ]
_____]

**MEMORANDUM DECISION RE MOTION FOR DAMAGES FOR
VIOLATION OF THE AUTOMATIC STAY**

Before the Court is the motion ("Motion") by debtor Byron Jha ("Debtor") for damages against the United States of America, Internal Revenue Service ("IRS"), for violation of the automatic stay. The IRS concedes that the IRS violated the automatic stay by sending nine Notice of Intent to Levy letters to Debtor post-petition. Debtor also seeks a determination that the IRS violated the automatic stay by not revising the amount of withholdings from Debtor's post-petition wages that were subject to a letter sent by the IRS pre-petition to Debtor's employer setting the amount of taxes to be withheld from Debtor's wages. The IRS opposes that aspect of the Motion as well as Debtor's damages.

The Court heard lengthy oral argument on the Motion and the matter was taken under submission upon the filing of supplemental

pleadings by the IRS. Debtor is represented by Cathleen Cooper Moran, Esq. of Moran Law Group, Inc. Special Assistant United States Attorney Chong S. Hong, Esq. represents the IRS.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.

## FACTS

Pre-petition, on or about August 3, 2007, Debtor provided a Form W-4 Employee's Withholding Allowance Certificate ("Withholding Request") to Debtor's employer requesting that Debtor's federal income tax withholding be based on single status with 5 withholding allowances.[1]

On April 17, 2008, the IRS sent a letter to Debtor ("Lock-in Letter")[2] informing Debtor that the IRS was going to instruct Debtor's employer to disregard the Withholding Request and instead instruct Debtor's employer to withhold income tax from Debtor's wages based on a marital status of single and no withholding allowances. The Lock-in Letter was sent based on a Withholding Compliance Referral dated February 29, 2008. The Withholding Compliance Referral was based on the fact that Debtor had owed taxes for every year since 1999 and Debtor had not voluntarily

---

[1] Exhibit B to the Declaration of Chong S. Hong in Support of Supplemental Response to Motion for Damages for Violation of Stay, filed on December 15, 2008 ("Hong Dec.").

[2] Exhibit B to Debtor's Motion for Damages Against the United States of America, Internal Revenue Service for Violation of the Automatic Stay, filed on September 17, 2008 ("Debtor's Motion") and attached to this Memorandum Decision.

changed Debtor's Form W-4.[3]  Specifically, for the tax years 2001-2007, Debtor underwithheld taxes as follows:

| Tax Year | Tax Per Return | Withholding Credit | Underwithholding |
|---|---|---|---|
| 2001 | $26,937 | $15,540 | $11,397 |
| 2002 | $26,026 | $7,876 | $18,150 |
| 2003 | $17,718 | $2,637 | $15,081 |
| 2004 | $10,931 | $7,211 | $3,720 |
| 2005 | $14,316 | $9,825 | $4,491 |
| 2006 | $11,639 | $6,898 | $2,495[4] |
| 2007 | $15,233 | $10,411 | $4,822 |

Debtor's bankruptcy schedules filed on July 8, 2008 show Debtor owed the IRS an aggregate of $145,575.00 in secured, priority and unsecured taxes for the tax years 1999-2007.

The Lock-in Letter provided that if Debtor disagreed with the IRS' determination of the withholding allowance, Debtor was to call the IRS at a telephone number provided in the Lock-in Letter and explain to the IRS why Debtor would be entitled to a different marital status and/or number of withholding allowances.  Debtor could also contest the proposed withholding allowances in writing. If the IRS did not hear from Debtor within 30 days from the date of the Lock-in Letter, Debtor's employer was instructed to withhold taxes at the status and allowance provided by the Lock-in Letter. The Lock-in Letter provided that if Debtor believed at a later time that Debtor was entitled to claim a different marital status and/or

---

[3] Exhibit A to the Declaration of Cathleen Cooper Moran in Support of Motion for Damages for Violation of Stay, filed on July 22, 2009 ("Moran Dec.").

[4] Debtor made 2 estimated tax payments in 2006 in the amount of $1,123 each, resulting in total credits of $9,144 for 2006.

more withholding allowances than the IRS determined, Debtor could complete a new Form W-4 as well as a written statement to support the claims made on the new Form W-4 and submit both documents to the IRS at an address provided in the Lock-in Letter. The Lock-in Letter withholding allowances took effect sometime after the pay date of May 23, 2008.[5] The Lock-in Letter increased the amount withheld by $148.97 per two-week pay period.[6]

On June 23, 2008, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. According to Debtor's schedules filed on July 8, 2008, Debtor is a single father with two minor children.[7] At the time Debtor filed Debtor's bankruptcy petition, Debtor earned $5,384.57 per month working as an operations manager,[8] and his monthly expenses were $4,855.00.[9] Debtor's only significant asset is a 2004 Dodge Caravan.[10]

Debtor scheduled secured debt on the 2004 Dodge Caravan and for income taxes owed to the IRS.[11] Debtor scheduled priority taxes

---

[5] Exhibit A to Declaration of Byron Jha in Support of Motion for Damages for Violation of Stay, filed on September 17, 2008 ("Original Jha Dec.").

[6] Exhibit B to Original Jha Dec.

[7] See Schedule I.

[8] Schedule I shows Debtor earned $5,384.57 per month working as an operations manager for Taymor Industries. This is Debtor's only source of income.

[9] See Schedule J.

[10] See Schedule A and Schedule B. Debtor's Schedule B lists personal property with a current market value of only $6,305.00 -- of which $5,730.00 is attributable to the 2004 Dodge Caravan.

[11] The two secured claims noted on Schedule D is a tax lien by the IRS securing a claim of $575.00 and a lien for Debtor's 2004 Dodge Caravan in the amount of $9,677.00.

owed to the IRS in the amount of $18,500.00 on Schedule E. Debtor also scheduled $163,995.00 in unsecured claims on Schedule F, of which $126,500.00 was for income taxes owed to the IRS for the years 1999-2003, plus dischargeable penalties.

On June 24, 2008, Debtor's bankruptcy counsel, Ms. Moran, provided notice of the commencement of Debtor's bankruptcy case to the IRS Special Procedures office in San Jose.[12] On July 4, 2008, the Bankruptcy Noticing Center sent a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines to the IRS.

On July 3, 2008, Ms. Moran left a substantive message for IRS attorney James Whitten.[13] On July 16, 2008, Ms. Moran called Mr. Whitten who referred Ms. Moran to IRS attorney Chong Hong.[14] On July 16, 2008, Ms. Moran called Mr. Hong and faxed to Mr. Hong a copy of the Lock-in Letter.[15]

Also on or about July 16, 2008, Debtor received in the mail nine separate Notices of Intent to Levy issued by the IRS relating to Debtor's delinquent taxes for the tax years 1999 through 2007.[16] On July 17, 2008, Ms. Moran called Mr. Hong and left a substantive message regarding the nine Notices of Intent to Levy.[17] The nine Notices of Intent to Levy caused Debtor increased stress such that Debtor took six vacation days from work and did not take Debtor's

---

[12] Moran Dec. at 1:24-26 and Exhibit A thereto.

[13] Moran Dec. at 2:2.

[14] Moran Dec. at 2:3-4.

[15] Moran Dec. at 2:5-6.

[16] Exhibit D to Debtor's Motion.

[17] Moran Dec. at 2:7-8.

children on vacation as planned, representing $2,318.36 in earnings. Debtor spent an additional $20 on medication for stomach distress. On July 21, 2008, Ms. Moran received a telephone call from Mr. Hong confirming that the IRS would not pursue any levies or liens against Debtor.[18]

On July 23, 2008, the IRS filed its proof of claim against Debtor asserting a secured claim of $575.00; a priority claim of $16,904.79; and an unsecured claim of $124,588.85 for income taxes due for 1999-2007.

On August 6, 2008, Debtor filed an amended Chapter 13 plan to reduce the monthly plan payments from $525 per month to $300 per month for the first 12 months and provide for stepped-up plan payments thereafter because Debtor did not have sufficient income with the Lock-in Letter in place for Debtor to make the original proposed plan payments of $525. The attorneys fees associated with the amendment to Debtor's plan total $112.50.

Debtor filed this Motion on September 17, 2008 seeking damages for violation of the automatic stay for both the IRS sending the nine Notices of Intent to Levy sent post-petition as well as the IRS' failure to lift the Lock-in Letter post-petition.

The Lock-in Letter was in effect through December 2008.[19]

Debtor was entitled to a federal income tax refund of $5,131.00 for the 2008 tax year.[20]

---

[18] Moran Dec. at 2:9-10; Hong Dec. at 2:8.

[19] Declaration of Byron Jha in Support of Motion for Damages for Violation of Stay, filed on July 22, 2009 ("Jha Dec."), at 1:22-23.

[20] Jha Dec. at 1:24-25.

## II.

## ANALYSIS

A party seeking damages for violation of the automatic stay must prove by a preponderance of the evidence that: (1) a bankruptcy petition was filed; (2) the debtor is an individual; (3) the creditor received notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages. In re Henry, 328 B.R. 664, 667 (Bankr. E.D.N.Y. 2005)(citations omitted). The first three elements are met in this case. The IRS concedes that the IRS' issuance of the nine Notices of Intent to Levy post-petition violated the automatic stay. The issues before the Court are whether: (1) the IRS' failure to lift the Lock-in Letter post-petition was a willful violation of the automatic stay; and (2) what, if any, damages, Debtor suffered as a result of any willful violation of the automatic stay.

### A. Lock-in Letter

Debtor asserts that the pre-petition Lock-in Letter impermissibly asserts control over property of Debtor's bankruptcy in violation of Bankruptcy Code § 362(a)(3), which provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of --
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(3). According to Debtor, Bankruptcy Code § 1306(a)(2) classifies post-petition earnings as property of the

bankruptcy estate. Because the Lock-in Letter required Debtor's employer to turn over wages in excess of the taxes owed for the tax year to which the Lock-in Letter applied, as demonstrated by the fact that Debtor received a federal income tax refund of over $5,000 for the 2008 tax year, the compulsory overwithholding of Debtor's wages violated the automatic stay.

The IRS contends that lock-in letters sent pre-petition do not violate the automatic stay for three reasons. First, lock-in letters are not an attempt to collect pre-petition taxes. Instead, lock-in letters only target withholding for the current tax year. Because Debtor did not bifurcate Debtor's tax year, all taxes due in 2008 are post-petition taxes. See 26 U.S.C. § 1398(d). Second, monies withheld by an employer are not property of the bankruptcy estate and, rather, are held in trust for the IRS. Begier v. United States, 493 U.S. 53 (1990). Third, even if monies withheld by an employer are considered to be property of the bankruptcy estate, the issuance of a lock-in letter falls within the exercise of police and regulatory powers exception of Bankruptcy Code § 362(b)(4). Because the Court determines that the monies withheld by Debtor's employer pursuant to the Lock-in Letter were not property of the estate, the Court does not address the IRS' argument that leaving the Lock-in Letter in place falls within the exercise of police and regulatory powers exception of Bankruptcy Code § 362(b)(4).

### 1. Nature and Purpose of Lock-in Letters

As explained by the United States Tax Court:

> In 1943, Congress required the withholding of income taxes at the source on wages, see Current Tax Payment Act of 1943, ch. 120, 57 Stat. 126, and this pay-as-you-go system for employees has been in place ever since.

Withholding alleviates the burden on wage earners of having to make large payments of tax at one time, and it benefits the Government not only by providing a more constant stream of receipts but also by protecting "against deaths, disappearances, and insolvencies, and to catch the itinerants who were moving from place to place with incomes taxable in the aggregate but with whom the Treasury could not keep pace." 13 Mertens, Law of Federal Income Taxation, sec. 47A.02, at 47A-8 (2005 rev.).

The Commissioner has described income tax withholding as other than a tax in itself. Rev. Rul. 60-220, 1960-1 C.B. 399; see sec. 3402; sec. 31.3402(a)-1, Employment Tax Regs. During the taxable year, a taxpayer's liability is inchoate and not precisely determinable. After the close of the year, however, the taxpayer determines his or her liability, reports it on a return, and offsets the tax withheld against that liability. If there is excess withholding, it may be claimed as an overpayment, and in most instances it is promptly refunded to the taxpayer.

There are those who may seek to avoid withholding by claiming to be exempt therefrom or by overstating their withholding allowances on Form W-4. The Commissioner's Withholding Compliance Program is designed to deal with such situations:

> The mission of the Withholding Compliance Program is to ensure that taxpayers who have serious under-withholding problems are brought into compliance with federal income tax withholding requirements. The program uses Form W-2 Wage and Tax Statement (W-2) information to identify taxpayers with insufficient withholding. The goal is to correct withholding to ensure that taxpayers have enough income tax withheld to meet their tax obligations. [IRM 5.19.11.1(1) (May 1, 2006).]

Integral to the Withholding Compliance Program is the "Lock-in Letter":

> Letters 2800C and 2801C, mailed to the employer and the taxpayer, respectively, are commonly known as the "lock-in letters". Letter 2800C instructs the employer to disregard the Form W-4 submitted by the taxpayer and withhold at the marital status and the number of allowances determined by the Service. Letter 2801C advises the taxpayer that the employer has been instructed to disregard the Form W-4 submitted by the taxpayer and withhold at the rate

specified in Letter 2800C. [IRM 5.19.11.3.2(1) (May 1, 2006).]

Internal Revenue Manual provisions contemplate taxpayer responses to "Lock-in Letters" and provide for redeterminations, specifically including a release of the "lock-in". E.g., IRM 5.19.11.3.9 (May 1, 2006); IRM 5.19.11.3.10 (May 1, 2006). These provisions are based on authority granted by regulations. See sec. 31.3402(f)(2) -1(g), Employment Tax Regs.

Davis v. Commissioner, T.C. Memo. 2008-238, 2008 WL 4703706, *4 (2008)(footnotes omitted).

The Court finds that the purpose of the Lock-in Letter was to insure Debtor's payment of taxes owed in 2008 by mandating Debtor's withholding allowance. The Lock-in Letter was issued solely because Debtor failed to provide for sufficient withholdings for at least seven years prior to the 2008 tax year. However, there is no evidence in the record that the Lock-in Letter attempted to collect taxes owed for any year prior to 2008.

The Lock-in Letter provided a 30-day opportunity for Debtor to provide information to the IRS and to seek an adjustment of the proposed withholding allowances. The Lock-in Letter also provided a mechanism for Debtor to seek adjustment to the withholding allowance after the initial 30-day period. Specifically, the Lock-in Letter provided in relevant part:

> If you disagree with our determination please call us at the number shown below to explain why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above. Please have the following information available to discuss. (If you file jointly you must have the same information available for your spouse.)
>
> 1. Form W4 and worksheet.
>
> 2. Most current pay stub. (If you have more than one job, the most current pay stubs for all of your jobs.)

MEMORANDUM DECISION RE
MOTION FOR DAMAGES, ETC
Case: 08-52283   Doc# 102   Filed: 10/05/11   Entered: 10/07/11 15:52:07   Page 10 of 11
10

3. Number of allowances you (and your spouse) are currently claiming on your Form(s) W-4.

4. The number of allowances you (and your spouse) are entitled to claim.

5. The Social Security Number and/or dates of birth for any children claimed on your return and a copy of your most recent Schedule A deductions (if any).

If you prefer, you may write to us at the address shown below. Please send a written statement to support your claim explaining why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above.

In either case if we do not hear from you within 30 days from the date of this letter, your employer(s) has been instructed to withhold at the status and allowances shown above. If you later believe that you are entitled to claim a different marital status and/or more withholding allowances (or complete exemption from withholding) than we determined, you can complete a new Form W-4 and a written statement to support the claims made on the Form W-4. You must submit the Form W-4 and the written statement to us at the address shown below.

Lock-in Letter at pages 1-2.

Debtor's counsel, Ms. Moran, contacted the IRS on April 25, 2008 with respect to the Lock-in Letter. The IRS would not speak with Ms. Moran because the Tax Information Authorization Form, IRS Form 8821, signed by Debtor in March 2008 did not cover the current tax year, 2008. Ms. Moran concluded that by the time Ms. Moran obtained an updated IRS Form 8821 to include the 2008 tax year, Debtor would have filed Debtor's bankruptcy petition and the Lock-in Letter would be withdrawn upon the filing of Debtor's bankruptcy case. There is no evidence in the record that Debtor himself sought an adjustment to the proposed withholding allowances during the 30-day opportunity provided in the Lock-in Letter. There is also no evidence in the record that either Debtor or Debtor's counsel later completed a new Form W-4 and a written statement to